**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SANDRIDGE ENERGY, INC., *et al.*, | § | Case No. 16-32488 (DRJ) |
| | § | |
| Reorganized Debtors. | § | Jointly Administered |
| | § | |
| *Baker Farms, Inc. and Steven T. Bouziden* | § | |
| *Revocable Trust, Steven T. Bouziden, Trustee,* | § | |
| | § | |
| Royalty Owners, | § | Adv. No. 16-03223 |
| | § | |
| v. | § | |
| | § | |
| *SandRidge Exploration and Production, LLC,* | § | |
| | § | |
| Reorganized Debtor. | § | |
| | § | |

**ROYALTY OWNERS' PRE-HEARING BRIEF
ON SPECIFIED QUESTIONS OF LAW**

## Table of Contents

Summary ...................................................................................................................... 1

Background .................................................................................................................. 3

   A.    The Royalty Owners' Prepetition Suit against the Debtor ............................... 3

   B.    The Debtor's Chapter 11 Cases ....................................................................... 4

   C.    The Chapter 11 Plan and Confirmation Order ................................................. 5

          1.   Provisions on the Assumption and Rejection of
               Executory Contracts in the Chapter 11 Plan and Confirmation Order ............ 6

          2.   Treatment of Other Secured Claims under the Chapter 11
               Plan and Confirmation Order ......................................................................... 6

          3.   Provisions on the Vesting of Assets in the Reorganized Debtors
               "Free and Clear" under the Chapter 11 Plan and Confirmation Order ............ 7

          4.   Discharge and Boilerplate Injunctions in the Chapter 11 Plan ....................... 7

          5.   Chapter 11 Plan Provides for Treatment of Interests Similar to the Royalty
               Owners' Interests. ......................................................................................... 8

          6.   Preservation of Royalty Owners' Rights in the Chapter 11
               Plan and Confirmation Order ......................................................................... 9

Legal Questions Presented ......................................................................................... 10

Argument .................................................................................................................... 10

   A.    The Kansas Leases "Ride Through," and the Royalty Owners' Claims for Prepetition
       Underpayment therefore Survive the Bankruptcy. ........................................ 10

          1.   Kansas Mineral Leases are Subject to Section 365. ..................................... 11

          2.   The Debtor Neither Assumed nor Rejected the Kansas Leases. .................... 12

          3.   The Kansas Leases Ride Through the Bankruptcy and the Royalty Owners'
               Claims Survive the Bankruptcy Proceeding. ............................................... 13

   B.    The Oklahoma Leases are Subject to Statutory Liens that Passed Through the
       Bankruptcy Because the Debtor Failed to Address Them. ............................. 14

          1.   The Royalty Owners have Super-Priority, Self-Perfecting
               Liens on the Oklahoma Leases ..................................................................... 14

          2.   The Royalty Owners' Statutory Liens Have Not Been Stripped. .................. 15

Conclusion .................................................................................................................. 17

<u>Table of Authorities</u>

**Cases**

*Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White Transp., Inc.)*,
   725 F.3d 494 (5th Cir. 2013) ................................................................... 15

*Century Indem. Co. v. Nat'l Gypsum Co. (Matter of Nat'l Gypsum Co.)*,
   208 F.3d 498 (5th Cir. 2000) ............................................................ 11, 13

*Elixer Indus., Inc. v. City Bank & Trust Co. (In re Ahern Enters., Inc.)*,
   507 F.3d 817 (5th Cir. 2007) ................................................................... 16

*In re Crusader Energy Group Inc.*,
   No. 09-31797 (Bankr. N.D. Tex. Nov. 2, 2009) ..................................... 12

*In re Gasoil, Inc.*,
   59 B.R. 804 (Bankr. N.D. Ohio 1986) ............................................ 11, 12

*In re J. H. Land & Cattle Co., Inc.*,
   8 B.R. 237 (Bankr. W.D. Okla. 1981) ............................................ 11, 12

*In re Linn Energy, LLC*,
   No. 16-60040 (Bankr. S.D. Tex. Jan. 24, 2017) ..................................... 12

*In re Spring Valley Farms, Inc.*,
   863 F.2d 832 (11th Cir.1989) ................................................................. 16

*Ingram v. Ingram*,
   214 Kan. 415 (1974) ............................................................................... 11

*Johnson v. Home State Bank*,
   501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ............................ 15

*Jupiter Oil Co. v. Snow*,
   819 S.W.2d 466 (Tex. 1991) ................................................................... 12

*NLRB v. Bildisco and Bildisco*,
   465 U.S. 513 (1984) ................................................................................ 13

*River Prod., Co., Inc. v. Webb (Matter of Topco, Inc.)*,
   894 F.2d 727 (5th Cir. 1990) ............................................................ 11, 12

*Samson Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*,
   407 B.R. 140 (Bankr. D. Del 2009) ........................................................ 15

*Simmons v. J.T. Savell (In re Simmons)*,
   765 F.2d 547 (5th Cir. 1985) ................................................................... 15

*Stumpf v. McGee (In re O'Connor)*,
   258 F.3d 392 (5th Cir. 2001) ................................................................... 12, 13, 14


**Statutes**

11 U.S.C 1123(b) ................................................................................................... 7, 12

11 U.S.C. § 1141 ........................................................................................................ 16

11 U.S.C. 365 ........................................................................................... 10, 11, 12, 14

52 OKLA. STAT. § 549.3;
   2010 Okla. Sess. Law Serv. ch. 142 (West) ...................................................... 14, 15


**Rules**

Fed. R. Bankr. P. 6006(c) ......................................................................................... 13


**Treatises**

Sahar Jooshani, Note, *There's A New Act In Town:  How the Oklahoma Oil and Gas Owners'*
   *Lien Act of 2010 Strengthens the Position of Oklahoma Interest Owners*,
   65 OKLA L. REV. 133 (Fall 2012) .......................................................................... 15

Plaintiffs Baker Farms, Inc. and Steven T. Bouziden Revocable Trust, Steven T. Bouziden Trustee, on behalf of themselves and all others similarly situated (collectively, the "Royalty Owners") file this Pre-Hearing Brief pursuant to the Court's Order Regarding Scope of Legal Issues and Scheduling Deadlines with Respect to Adversary Proceeding No. 16-03223 [Adv. Dkt. 27] ("Scheduling Order").

### Summary

1.     The Royalty Owners are owed millions of dollars of unpaid royalties. The Royalty Owners are royalty owners under real estate mineral leases (the "Gas Leases") located in Oklahoma and Kansas. SandRidge E&P, LLC (the "Debtor") was the operator under the Gas Leases prior to the confirmation of the Debtor's Chapter 11 Plan (defined below).   In its role as operator, the Debtor failed to remit the full amount of royalties owed under the Gas Leases to the Royalty Owners.[1]

2.     This adversary proceeding arises from the objection filed by Royalty Owners to the *Joint Chapter 11 Plan Of Reorganization of Sandridge Energy Inc. and its Debtor Affiliate* (as amended, the "Chapter 11 Plan") [Main Dkt. 518].[2]  The Royalty Owners objected to the Chapter 11 Plan on the grounds that the Chapter 11 Plan did not address the Royalty Owners' rights or claims to the unpaid royalties. The Royalty Owners and the Debtors resolved the objection by agreeing to continue the dispute to this Adversary Proceeding and preserving the parties' rights.

3.     The Royalty Owners seek a declaration from this Court confirming that the Royalty Owners are permitted to prosecute a lawsuit, individually or as a class, against the

---

[1]    The amount of unpaid royalties is not at issue in this adversary proceeding.   The adversary proceeding is limited to whether or not the Royalty Owners are enjoined from continuing or commencing an action to seek recovery of unpaid royalties arising before the effective date of the Chapter 11 Plan.

[2]    Capitalized terms used but not defined herein have the meanings assigned to them in the Chapter 11 Plan.

Debtor in its capacity as the reorganized Debtor to recover unpaid royalties under the Gas Leases operated by the Debtor.  The question is whether the Royalty Owners' rights and claims under the Gas Leases survive the confirmation of the Chapter 11 Plan based on the nature of these rights and claims under applicable Kansas and Oklahoma law.

4.     This adversary does not require a determination of what amounts may be owed from the Debtor on account of unpaid royalties incurred prior to the effective date of the Chapter 11 Plan.   Rather this adversary proceeding is only to determine whether the Royalty Owners are enjoined from seeking to recover such unpaid amounts.

5.     The Royalty Owners seek clarification that the Order Confirming the Amended Joint Chapter 11 Plan of Reorganization, as amended [Main Dkt. 901] ("Confirmation Order"), did not, *sub silentio*, strip away the Royalty Owners' state-law rights under the Gas Leases. Clarification is needed because the Debtor now takes the position that the Chapter 11 Plan bars those claims based on vague boilerplate provisions in the Chapter 11 Plan even though the Chapter 11 Plan does not specifically address the Royalty Owners' rights and claims.   There is considerable risk that future courts and third parties may interpret the broad and imprecise language in the Chapter 11 Plan dealing with discharged obligations and injunctions as impairing the rights of the Royalty Owners to unpaid royalties.

6.     The Royalty Owners' claims under the Gas Leases passed through bankruptcy unaffected.  The analysis varies depending on which state's law applies.  The Kansas Gas Leases are executory contracts.  They "ride through" because the Debtor neither assumed nor rejected them.  The Oklahoma Gas Leases are real estate assets subject to statutory liens.  Those liens and the underlying royalty claims pass through the case because the Debtor did not avoid them or

otherwise address them in the Chapter 11 Plan.  In short, the Royalty Owners' rights survive the bankruptcy because a debtor cannot evade these types of obligations simply by ignoring them.

7.      The Royalty Owners seek a declaratory judgment to clarify for other courts that the Confirmation Order should not be interpreted as barring or otherwise impairing any of the Royalty Owners' rights to commence or continue an action to recover unpaid royalties.

### Background

**A.     The Royalty Owners' Prepetition Suit against the Debtor**

8.      The Royalty Owners hold Gas Leases that grant them royalty interests in certain wells in Oklahoma and Kansas operated by the Defendant.[3]

9.      The Defendant continues to operate the Gas Leases today.

10.     On April 21, 2016, the Royalty Owners filed suit ("Prepetition Suit") against SandRidge E&P in the District Court of Comanche County, Kansas.  On May 13, 2016, the Prepetition Suit was removed to the United States District Court for the District of Kansas in case number 6:16-cv-01133-EFM-TJJ.[4]

11.     The Royalty Owners allege that the Debtor underpaid royalties owed to them under the Gas Leases.  The Royalty Owners allege that the Debtor used an improper method to calculate royalty payments that resulted in underpayments.  The Royalty Owners styled the Prepetition Suit as a class action brought on behalf of all royalty interest owners in wells operated by the Debtor in Kansas and Oklahoma.

---

[3]     Admitted by the Defendant in its Answer and Affirmative Defenses to Royalty Owners' Original Complaint for Declaratory Judgment [Adv. Dkt. 11] ("Answer") at paragraph 1.

[4]     The Royalty Owners and the Defendant have stipulated to the authenticity of the pleadings and orders filed in the Prepetition Suit, in the Chapter 11 Cases and in this adversary proceeding.

3

**B.      The Debtor's Chapter 11 Cases**

12.      On May 16, 2016 ("Petition Date"), the Debtor and certain of its affiliates ("Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code ("Chapter 11 Cases").  The Chapter 11 Cases are jointly administered under Case No. 16-32488 in the United States Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court").

13.      On May 16, 2016 the Debtors filed their *Emergency Motion for Entry of Interim and Final Orders Authorizing Mineral Payments and Working Interest Disbursement* [Dkt. No. 9] (the "Royalty Motion") to permit the Debtors to pay pre-petition royalties in the ordinary course.   The grounds for such relief are premised on section 541 of the Bankruptcy Code, which provides that all property to which a debtor has legal or equitable interest becomes property of the estate upon the commencement of a chapter 11 case. 11 U.S.C. § 541(a)(1).  The Debtor acknowledged that the royalties owed to the Royalty Owners are not property of the Debtor's estate and the Debtor could suffer severe consequences, including lease termination, if it fails to remit the royalties.

14.      On May 18, 2016, the Bankruptcy Court entered the *Order Authorizing Payment of Mineral Payments and Working Interest Disbursements* [Dkt. No. 94] (the "Royalty Order").

15.      On May 18, 2016, the Debtors filed their *Joint Chapter 11 Plan of Reorganization of Sandridge Energy, Inc. and its Debtor Affiliates* [Main Dkt. 60].  On July 14, 2016, the Debtors filed their *Amended Joint Chapter 11 Plan of Reorganization of Sandridge Energy, Inc. and its Debtor Affiliates* [Main Dkt. 518] (defined above as the Chapter 11 Plan).

16.      On July 22, 2016, the Royalty Owners filed proofs of claim numbers 256 and 257 (the "Proofs of Claim") in the Chapter 11 Cases asserting secured claims of over $7.5 million for "[u]nderpayment of royalty on gas." The Proofs of Claim reference the class action claims brought in the Prepetition Suit and a copy of the petition filed in the Prepetition Suit is attached.

4

17.     On August 4, 2016, the Royalty Owners filed their *Objection to Confirmation of the Joint Chapter 11 Plan of Reorganization of SandRidge Energy Inc. and its Debtor Affiliates* [Main Dkt. 688] ("Original Objection").  On August 26, 2016, the Royalty Owners filed their *Supplement to Royalty Interest Owners' Objection to Confirmation of the Joint Chapter 11 Plan of Reorganization of SandRidge Energy Inc. and its Debtor Affiliates* [Main Dkt. 777] ("Supplemental Objection," and, together with the Original Objection, the "Objection").

18.     In the Objection, the Royalty Owners described their claims for underpayment of prepetition royalties under the Gas Leases.  *See* Supp. Obj., ex. A (Class Action Petition).  The Royalty Owners argued that the Chapter 11 Plan failed to address their claims and that the Royalty Owners' claims should "pass through the bankruptcy unaffected by it."  Orig. Obj. at 7.

19.     On September 9, 2016, the Court entered its *Order Confirming the Amended Joint Chapter 11 Plan of Reorganization of SandRidge Energy, Inc. and Its Debtor Affiliates, as amended* [Main Dkt. 901] (defined above as the Confirmation Order).

### C.     The Chapter 11 Plan and Confirmation Order

20.     The Chapter 11 Plan and the Confirmation Order contain provisions relating to the assumption and rejection of unexpired leases, the treatment of secured claims, the vesting of assets "free and clear" in the reorganized Debtors, discharge and injunctions, treatment of claims similar to the Royalty Owners' claims, and the express preservation of Royalty Owners' right to seek a determination of their legal status to recover unpaid royalties.  Nothing in the Chapter 11 Plan or the Confirmation Order specifically references any of the Gas Leases at issue in the Prepetition Suit.

    1.     <u>Provisions on the Assumption and Rejection of</u>
             <u>Executory Contracts in the Chapter 11 Plan and Confirmation Order</u>

21.     Neither the Chapter 11 Plan nor the Confirmation Order contains any express reference to any of the Gas Leases.

22.     The Chapter 11 Plan addresses assumption of contracts categorically, as follows:

> On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases will be deemed assumed by the Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code . . .

Chapter 11 Plan at 28.

23.     On July 27, 2016, the Debtor filed its *Notice of Filing of Plan Supplement* [Main Dkt. 603] ("<u>Plan Supplement</u>"). Exhibit I to the Plan Supplement is a list titled "Assumed Contracts and Unexpired Leases." Although the list includes some contracts to which the Royalty Owners are counterparties, such as a saltwater disposal agreement appearing as item 1391 on the list, Exhibit I to the Plan Supplement does not list any of the Gas Leases. Plan Supp. at 494. Exhibit J to the Plan Supplement is a list titled "Rejected Executory Contracts and Unexpired Leases." Exhibit J does not list any of the Gas Leases.[5]

    2.     <u>Treatment of Other Secured Claims under the Chapter 11</u>
             <u>Plan and Confirmation Order</u>

24.     The Chapter 11 Plan defines "Other Secured Claim" as "any Secured Claim against any Debtor, other than (a) a First Lien Credit Agreement Claim, or (b) a Second Lien Note Claim," Chapter 11 Plan at 8. The Chapter 11 Plan provides that "Other Secured Claims" are "Unimpaired." Chapter 11 Plan at 17.

---

[5]     On September 2, 2016, the Debtor filed its *Notice of Filing of Second Supplement to Plan Supplement* [Main Dkt. 838] (the "<u>Second Plan Supplement</u>") that included amendments to Exhibit I and Exhibit J. The amended Exhibits do not list the Gas Leases.

25.     The Chapter 11 Plan further provides that holders of Other Secured Claims are

entitled to:

> [E]ither (i) payment in full in Cash of the unpaid portion of its Other Secured
> Claim on the Effective Date or as soon thereafter as reasonably practicable (or if
> payment is not then due, shall be paid in accordance with its terms); (ii) delivery
> of the collateral securing any such Other Secured Claim and payment of any
> interest required under section 506(b) of the Bankruptcy Code; (iii) Reinstatement
> pursuant to section 1124 of the Bankruptcy Code, or (iv) such other recovery
> necessary to satisfy section 1129 of the Bankruptcy Code.

Chapter 11 Plan at 17.

      3.     <u>Provisions on the Vesting of Assets in the Reorganized Debtors</u>
           <u>"Free and Clear" under the Chapter 11 Plan and Confirmation Order</u>

26.     The vesting of assets is described in the Chapter 11 Plan as follows:

> [A]ll property in each Estate, all Causes of Action, and any property acquired by
> any of the Debtors . . . shall vest in each respective Reorganized Debtor, free and
> clear of all Liens, Claims, charges, or other encumbrances.

Chapter 11 Plan at p. 24 (Article IV(E)).

27.     The Confirmation Order similarly provides that "all property in each Estate . . .

shall vest in each respective Reorganized Debtor, fee and clear of all Liens, Claims, charges, or

other encumbrances."  Conf. Order ¶¶ 72, 105.

28.     The provisions quoted above are subject to the other terms of the Chapter 11 Plan.

None of these provisions quoted above regarding the vesting of assets, nor any other provision of

the Chapter 11 Plan or Confirmation Order, refers specifically to the Gas Leases.

      4.     <u>Discharge and Boilerplate Injunctions in the Chapter 11 Plan</u>

29.     The Chapter 11 Plan purports to release all claims arising prior to the effective

date of the Chapter 11 Plan against the Debtors and other parties pursuant to section 1123(b).

Chapter 11 Plan  at pp. 37-38 (Article VIII(E)-(F)).  The Chapter 11 Plan further purports to

discharge such claims under section 1141(d) of the Bankruptcy Code.  Chapter 11 Plan at pp. 36-

37 (Article VIII(B)).  Finally, the Chapter 11 Plan purports to impose an injunction against any

party seeing to assert such claims.   Chapter 11 Plan at p. 39 (Article VIII(H)).   The Court

approved these provisions.  Conf. Order ¶¶ 15, 43, 84-88.

     5.    <u>Chapter 11 Plan Provides for Treatment of Interests Similar to the Royalty Owners' Interests</u>

     30.    The Chapter 11 Plan expressly addresses other parties' interests that are similar to

the Royalty Owners' interests.   With respect to the Non-Debtor Subsidiary Royalty Interest, the

Chapter 11 Plan provides:

> The Plan shall not (a) discharge, release, enjoin, or otherwise impair any Non-Debtor Subsidiary Royalty Interest or (b) discharge, release, enjoin, or otherwise impair (including, without limitation, with respect to priority) any Liens, whether contractual or statutory, securing any Non-Debtor Subsidiary Royalty Interest. On the Effective Date, the Debtors and Reorganized Debtors shall be deemed to have assumed any oil and gas lease in which there exists a Non-Debtor Subsidiary Royalty Interest.

Chapter 11 Plan at p. 24 (Article V(E)).

     31.    With respect to the Federal Lease Interests, the Chapter 11 Plan provides in

relevant part:

> Notwithstanding any other provision in the Plan or any document implementing the Plan, the Interior shall retain the right to perform any audit and/or compliance review on the Federal Lease Interests, and if appropriate, collect from the Reorganized Debtors any additional monies owed by the Debtors on the Federal Lease Interests, without those rights being adversely affected by the Chapter 11 Cases. Such rights shall be preserved in full as if the Chapter 11 Cases had not occurred. The Reorganized Debtors will retain all defenses with respect to the foregoing.

Chapter 11 Plan at p. 24 (Article V(G)).

6.     <u>Preservation of Royalty Owners' Rights in the Chapter 11
Plan and Confirmation Order</u>

32.     The Royalty Owners' Objection to the Chapter 11 Plan was resolved through the addition of language to the Confirmation which was agreed upon by the Royalty Owners and the Debtors and provides the following:

> The lead plaintiffs in *Baker Farms, Inc. v. SandRidge E&P, LLC*, No. 16-01133 (D. Ct. Kan. 2016) (individually or as a class, the "Royalty Owner Plaintiffs") may commence an adversary proceeding in the Bankruptcy Court for a declaratory judgment (the "Royalty Status Proceeding") on whether the injunctions, discharge, and stays in the Plan apply to the Royalty Owner Plaintiffs' current or future individual or class suits brought in a court of competent jurisdiction to: (a) determine whether the Debtors and/or the Reorganized Debtors have fully performed under the terms of the leases with the Royalty Owner Plaintiffs; (b) determine the amount of property, if any, that is in the Debtors and/or Reorganized Debtors possession that is the property of the Royalty Owner Plaintiffs (and not property of the Debtors' estate), and if it is determined that the Debtors and/or Reorganized Debtors are in possession of the Royalty Owner Plaintiffs' property, seek enforcement to turn over such property to the Royalty Owner Plaintiffs; and/or (c) determine whether the Royalty Owner Plaintiffs are entitled to enforce their rights under their leases and applicable state law including, without limitation, the rights under applicable state law to an accounting or cancellation of the leases (the issues or assertions set forth in clauses (a) through (c), the "Royalty Status Issues").

Conf. Order ¶ 144.

33.     To preserve the Royalty Owners' rights under the Gas Leases, the agreed language to the Confirmation Order goes on to provide:

> The transactions that occur to consummate the Plan will not moot the litigation of any of the Royalty Status Issues. Any legal entitlements or rights that the Royalty Owners Plaintiffs establish in the Royalty Status Proceeding as reflected above will be enforceable against the Reorganized Debtors to the extent so declared in the Royalty Status Proceeding. The Debtors' and the Reorganized Debtors' rights to contest, challenge, or dispute the Royalty Status Issues or the Royalty Status Proceeding are fully preserved and reserved.

Conf. Order ¶ 145.

34.     On September 27, 2016, the Royalty Owners filed their *Original Complaint for Declaratory Judgment* [Adv. Dkt. 1], giving rise to this adversary proceeding.

## Legal Questions Presented

35.    On February 3, 2017, the Court entered the Scheduling Order posing two legal

questions that the Royalty Owners answer in this pre-hearing brief.

**Question 1:**   Are the Plaintiffs entitled to commence or continue an action
asserting any remedies (including damages or equitable lease cancellation) against
the Reorganized Debtors arising from alleged underpayments of royalties under
the Gas Leases occurring on or before the Effective Date of the Plan, or, instead,
is any such action barred by the injunctions in the Confirmation Order and/or the
Plan subject to treatment as alleged General Unsecured Claims or otherwise under
the applicable provisions of the Confirmation Order and Plan?

**Short Answer:**   Yes.  The Royalty Owners' rights under the Gas Leases ride
through the bankruptcy case because, in the case of the Kansas Gas Leases, the
Debtor neither assumed or rejected the Kansas Gas Leases, and in the case of the
Oklahoma Gas Leases, the Debtor failed to address the Oklahoma Royalty
Owner's statutory liens in the Chapter 11 Plan and otherwise provided that all
Other Secured Claims are unimpaired under the Chapter 11 Plan.

**Question 2:**   Do the provisions of the Confirmation Order and the Plan –
including, but not limited to, paragraphs 72, 105, 144, and 145 of the
Confirmation order and Article IV(E) of the Plan – impact the analysis of
Question 1, and if so, what impact do they have?

**Short Answer:**   No.  The general provisions that purport to vest all assets "free
and clear" in the reorganized Debtors are not absolute.   These provisions are
subject to the other provisions in the Chapter 11 Plan.  As noted above, under the
Chapter 11 Plan, the Royalty Owner's rights and claims ride through unaffected.

## Argument

36.    The Royalty Owners may commence an action or continue the Prepetition Suit

because the Royalty Owners' interests were not addressed under the Chapter 11 Plan and thus

pass through confirmation of the Chapter 11 Plan unaffected.  The relevant analysis depends on

whether the lease is governed by Kansas or Oklahoma law.

### A.    The Kansas Leases "Ride Through," and the Royalty Owners' Claims for Prepetition Underpayment therefore Survive the Bankruptcy.

37.    The Kansas leases are executory contracts or unexpired leases within the meaning

of section 365 of the Bankruptcy Code.  Because the Debtor neither assumed nor rejected them,

10

the leases "ride through" the bankruptcy proceeding, "thus allowing the non-debtor's claim to survive the bankruptcy." *Century Indem. Co. v. Nat'l Gypsum Co. (Matter of Nat'l Gypsum Co.)*, 208 F.3d 498, 504 n.4 (5th Cir. 2000).

     1.    <u>Kansas Mineral Leases are Subject to Section 365.</u>

    38.    Section 365 allows a debtor to assume or reject executory contracts and unexpired leases. 11 U.S.C. § 365(a). An unexpired lease includes any "rental agreement to use real property." 11 U.S.C. § 365(m). Whether an oil and gas lease is subject to section 365 of the Bankruptcy Code is determined by substantive state law. *River Prod., Co., Inc. v. Webb (Matter of Topco, Inc.)*, 894 F.2d 727, 739 n.17 (5th Cir. 1990).

    39.    "The issue then is whether the interest [conveyed by an oil and gas lease] was conveyed in fee, or is in the form of a lease." *In re Gasoil, Inc.*, 59 B.R. 804, 807 (Bankr. N.D. Ohio 1986). In some states, "so-called leaseholds . . . actually constitute determinable fee interests" in minerals and are therefore not leases subject to section 365. *Topco*, 894 F.2d at 739 n.17. In other states, an oil and gas lessee does not receive "a grant of the minerals in fee," and instead receives only the "right to drill for oil and gas" for a period of time. *Gasoil*, 59 B.R. at 807. This more limited right is not a freehold interest, but is instead a leasehold right to "use real property" for exploration, and is therefore subject to section 365. *Id.* (applying Ohio law).

    40.    In Kansas, oil and gas leases fall "within the purview of Code § 365." *In re J. H. Land & Cattle Co., Inc.*, 8 B.R. 237, 238-39 (Bankr. W.D. Okla. 1981) (citing *Ingram v. Ingram*, 214 Kan. 415, 418 (1974)). This is because a Kansas mineral lease "does not create any present vested estate in the nature of title to the land which it covers." *Ingram*, 214 Kan. at 418. Instead, a lease "merely conveys a license to enter upon the land and explore for such minerals and if they are discovered to produce and sever them." *Id.* This is a "leasehold interest," *Ingram*, 214 Kan. at 418, and is therefore subject to section 365, *J. H. Land & Cattle Co.*, 8 B.R. at 238-39;

*see also Gasoil*, 59 B.R. at 807 (same conclusion under Ohio law where no fee interest in minerals is conveyed).[6]

41.     Bankruptcy courts have uniformly applied section 365 to Kansas oil and gas leases.  *E.g.*, *J. H. Land & Cattle Co.*, 8 B.R. at 238-39; Order Granting Motion Regarding Assumption of Executory Contracts / Unexpired Leases (Kansas Oil and Gas Leases and Other Leases), *In re Crusader Energy Group Inc.*, No. 09-31797 (Bankr. N.D. Tex. Nov. 2, 2009) (granting motion to assume Kansas mineral leases and providing cure amounts); *accord* Order (A) Authorizing Assumption of Certain Oil and Gas Leases, (B) Setting the Cure Amount Thereto, and (C) Granting Related Relief, *In re: Linn Energy, LLC*, No. 16-60040 (Bankr. S.D. Tex. Jan. 24, 2017) (authorizing assumption "[t]o the extent the Kansas Leases are unexpired leases, as such term is used in section 365").

2.      The Debtor Neither Assumed nor Rejected the Kansas Leases.

42.     A debtor-in-possession may assume or reject an executory contract or unexpired lease at any time prior to plan confirmation, under 11 U.S.C. § 365(d)(2), or as part of plan confirmation, under 11 U.S.C. § 1123(b)(2).   In either case, "bankruptcy court approval for assumption or rejection must appear either in an order or as part of the plan-confirmation." *Stumpf v. McGee (In re O'Connor)*, 258 F.3d 392, 400 (5th Cir. 2001).

43.     Because assumption requires court approval, executory contracts and unexpired leases "may *not* be assumed either by implication or through the use of boilerplate language." *Id.* at 401 (emphasis in original) (internal cite omitted) (collecting cases).  The *O'Connor* panel

---

[6]     Kansas law stands in contrast to the laws of states like Texas where oil and gas leases are not subject to section 365.  In Texas, a "common oil and gas lease is fee simple determinable estate in the realty."  *Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex. 1991) (calling oil and gas "leases" a "misnomer").  Accordingly, Texas mineral leases are treated as conveyances of real property not subject to section 365. *Topco*, 894 F.2d at 739 n.17.

thus rejected the argument that catch-all plan language – "[a]ll . . . executory contracts . . . not

rejected prior . . . will be assumed" – was sufficient to effect an assumption.  *Id.*

44.     Here, the Debtor never assumed or rejected the Kansas leases.  The Debtor never

filed a motion to assume or reject the leases.  *See* Fed. R. Bankr. P. 6006(c) (requiring notice to

be given to counterparties to any contract or lease to be assumed or rejected).  Nor did the

Debtor's Chapter 11 Plan make any express reference to any of the Royalty Owners' leases,

despite having identified thousands of other executory contracts for assumption or rejection,

including at least one executory contract with the Royalty Owners.  *E.g.* Plan Supp. at 494.

Although the Plan does contain catch-all language – "except as otherwise provided in the Plan,

all Executory Contracts or Unexpired Leases will be deemed assumed," Plan at 28 – this type of

boilerplate language is insufficient to effect an assumption, *O'Connor*, 258 F.3d at 401.

3.     The Kansas Leases Ride Through the Bankruptcy and the Royalty Owners'
        Claims Survive the Bankruptcy Proceeding.

45.     When a contract or lease is neither assumed nor rejected, it "continues in place

between the parties, passing through the bankruptcy *to the reorganized debtor*."  *O'Connor*, 258

F.3d at 404 (emphasis in original) (internal cite and quotes omitted).  Such a contract or lease

will "'ride through' the proceedings and be binding on the debtor even after a discharge is

granted."  *Century Indem. Co. v. Nat'l Gypsum Co. (Matter of Nat'l Gypsum Co.)*, 208 F.3d 498,

504 n.4 (5th Cir. 2000); *see also NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 546 n.12 (1984)

(Brennan, J., concurring) (observing that when a contract or lease rides through, "[t]he nondebtor

party's claim will therefore survive the bankruptcy proceeding.").

46.     Here, the Debtor's confirmed Chapter 11 Plan includes discharges, releases and

injunctions of and against claims arising from pre-petition events.  *See generally* Chapter 11 Plan

at pp. 36-40 (Article VIII).  These provisions do not impair the Royalty Owners' rights under the

Kansas leases because those leases are unexpired leases that were neither assumed nor rejected. *O'Connor*, 258 F.3d at 404.  Assumption requires an express Court order, and the boilerplate language in the injunction and release provisions of the Confirmation Order does not satisfy the requirements of section 365.  *Id.*   Accordingly, those provisions have no effect on the Royalty Owners' claims under the Kansas leases, which "ride through" and survive the bankruptcy.  *Id.*

> **B.** **The Oklahoma Leases are Subject to Statutory Liens that Passed Through the Bankruptcy Because the Debtor Failed to Address Them.**

47.     The Royalty Owners' claims under the Oklahoma leases are secured by super-priority, self-perfecting liens under a recent Oklahoma statute that was written to protect royalty owners during an operator's bankruptcy.  The Debtor failed to address those liens during the Chapter 11 Cases.  The Royalty Owners' due process rights prevent the Debtor from nullifying security interests *sub silentio* and without compensation.  Accordingly, the Royalty Owners' liens and their underlying claims pass through the bankruptcy, and the Royalty Owners are free to resume their Prepetition Suit to pursue those claims and rights.

> 1.     The Royalty Owners have Super-Priority, Self-Perfecting Liens In Connection With The Oklahoma Leases

48.     The Oklahoma legislature enacted the Oil and Gas Owners' Lien Act of 2010 ("Act") to provide royalty owners a lien that "attaches immediately to all oil and gas" and "[c]ontinues uninterrupted and without lapse in all oil and gas after severance; and . . . in and to all proceeds." 52 Okla. Stat. § 549.3; 2010 Okla. Sess. Law Serv. ch. 142 (West).  The statutory lien extends to any "interest owner," which is defined as "a person owning an interest of any kind or nature in oil and gas rights before the acquisition thereof by a first purchase." § 549.2(6). Under the Act, the lien, with certain exceptions, "takes priority over any other lien, whether arising by contract, law, equity or otherwise, or any security interest." § 549.7.

49.     The Act was passed to strengthen the rights of royalty owners following the decision in *Samson Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 407 B.R. 140 (Bankr. D. Del 2009).  The *SemCrude* court held that the liens of interest holders in oil and gas proceeds were junior in priority to liens of lenders of the operator with liens under article 9 of the UCC. *SemCrude*, 407 B.R. at 147.  In direct response to *SemCrude*, the Act was passed to strengthen the position and priority of interest holders.  *See generally*, Sahar Jooshani, Note, *There's A New Act In Town:  How the Oklahoma Oil and Gas Owners' Lien Act of 2010 Strengthens the Position of Oklahoma Interest Owners*, 65 Okla L. Rev. 133 (Fall 2012).

50.     Here, the Royalty Owners hold interests in Oklahoma gas leases.  The Royalty Owners therefore qualify as "interest owners" under the Act and, accordingly, have a super priority lien on the oil and gas and proceeds that continues uninterrupted until satisfaction of their royalty interests.  52 Okla. Stat. §§ 549.2-3, 7.

2.     <u>The Royalty Owners' Statutory Liens Have Not Been Stripped.</u>

51.     "It is a longstanding rule in bankruptcy that [a] secured creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid may ignore the bankruptcy proceeding and look to the lien for satisfaction of the debt."  *Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White Transp., Inc.)*, 725 F.3d 494, 496 (5th Cir. 2013).  This is because "[a] bankruptcy discharge extinguishes only *in personam* claims against the debtor(s), but generally has no effect on an *in rem* claim against the debtor's property. *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).   "[T]his default rule only applies so long as the lien is not invalidated by some provision of the Code. *In re S. White Transp., Inc.*, 725 F.3d at 496 (quoting *Simmons v. J.T. Savell (In re Simmons)*, 765 F.2d 547, 556 (5th Cir. 1985)) (internal quotation omitted).

52.     Although the Bankruptcy Code authorizes the transfer of property "free and clear of all claims and interests of creditors" upon confirmation of a plan, 11 U.S.C. § 1141(c), a debtor seeking to strip away liens must satisfy certain requirements.  *Elixer Indus., Inc. v. City Bank & Trust Co. (In re Ahern Enters., Inc.)*, 507 F.3d 817, 822 (5th Cir. 2007).  One of these requirements is that "the secured creditor has notice of the plan and its potential effect on the creditor's lien."  *Ahern Enter.*, 507 F.3d at 822.  Further, constitutional due process requires that a debtor give notice reasonably calculated to apprise interested parties of what is occurring.  *E.g.*, *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 834 (11th Cir.1989) (mere knowledge of the bankruptcy insufficient to place creditor on inquiry notice, so that such creditor's claim is not discharged by section 1141).

53.     Here, the Debtor studiously avoided any explanation of what would happen to the Royalty Owners' interests.[7]  It never expressly identifies any of the Royalty Owners' claims. Nor does it refer to their statutory liens under Oklahoma law.  In fact, the only reference to the Royalty Owners appears in the Confirmation Order which preserves the Royalty Owners' rights to seek a determination of their legal status.  This language provides no notice to the Royalty Owners that the Debtor intended to strip their liens.[8]  Consequently, the Oklahoma Royalty Owners' statutory liens pass through the confirmation process and are enforceable against the Reorganized Debtor.

---

[7]     In the First-Day Royalty Motion [ECF No. 9], the Debtors reserved "the right to dispute that the Working Interests, Interest Burdens, or the proceeds thereof are real property interests, are not property of the estate, or are held in any form of trust."  First-Day Royalty Motion at p. 11 n 7.

[8]     Even if the Court determines that the Gas Leases are transferred "free and clear" under section 1141(c) of the Bankruptcy Code, the Chapter 11 Plan provides that Other Secured Creditors are unimpaired so the Royalty Owners' should be provided an opportunity to recover on their secured claims.

## <u>Conclusion</u>

The Royalty Owner's interests in the Gas Leases are unexpired leases subject to Section 365 of the Bankruptcy Code and secured claims.   The Debtor did not address these interests in the Chapter 11 Plan. Consequently, under well-established bankruptcy law, the Royalty Owners' rights and claims to unpaid royalties arising under the Gas Leases ride through the bankruptcy unaffected.  This Court should find that the Royalty Owners can continue or commence an action to recover the unpaid royalties.

Dated:  May 15, 2017                                Respectfully Submitted,


                                    /s/ *Charles Rubio*
                                    Charles Rubio
                                    State Bar No. 24083768
                                    SDOT No. 2108915
                                    crubio@diamondmccarthy.com
                                    Christopher R. Murray
                                    State Bar No. 24081057
                                    SDOT No. 1305742
                                    cmurray@diamondmccarthy.com
                                    909 Fannin STreet, Suite 1500
                                    Houston, Texas 77010
                                    DIAMOND McCARTHY LLP
                                    Telephone:     (713) 333-5100
                                    Facsimile:     (713) 333-5199

                                    - and -

                                    Rex A. Sharp
                                    State Bar No. 18118800
                                    rsharp@midwest-law.com
                                    5301 W. 75th Street
                                    Prairie Village, Kansas 66208
                                    REX A. SHARP, P.A.

                                    *Counsel for Baker Farms, Inc. and Steven T.*
                                    *Bouziden Revocable Trust, Steven T. Bouziden,*
                                    *Trustee*

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was filed and served by the Court's ECF Noticing System on the 15th day of May 2017, to all parties registered to receive ECF Notice.


_/s/ Charles Rubio_____