IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| SANDRIDGE ENERGY, INC., *et al.*,[1] | § § § | Case No. 16-32488 (DRJ) |
| Reorganized Debtors. | § § § | Jointly Administered |
| *Baker Farms, Inc. and Steven T. Bouziden Revocable Trust, Steven T. Bouziden, Trustee*, | § § § § | |
| Royalty Owners, | § § | Adv. No. 16-03223 |
| v. | § § § | |
| *SandRidge Exploration and Production, LLC*, | § § § | |
| Reorganized Debtor. | § § | |

## SANDRIDGE EXPLORATION AND PRODUCTION, LLC'S
## REPLY PRE-HEARING BRIEF

SandRidge Exploration and Production, LLC ("SandRidge E&P"), on behalf of the debtors in the above-captioned chapter 11 cases (collectively, the "Debtors," and after the effective date of the plan of reorganization, the "Reorganized Debtors"), by and through its undersigned counsel, hereby files this reply pre-hearing brief (this "Reply Brief") in the above-

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: SandRidge Energy, Inc. (4793); 4th Street Properties, LLC (N/A); Black Bayou Exploration, L.L.C. (0561); Braniff Restaurant Holdings, LLC (2453); CEBA Gathering, LLC (6478); CEBA Midstream GP, LLC (0511); CEBA Midstream, LP (7252); Cholla Pipeline, L.P. (5092); Cornhusker Energy, L.L.C. (4609); FAE Holdings 389322R, LLC (N/A); Integra Energy, L.L.C. (7527); Lariat Services, Inc. (0702); MidContinent Resources, LLC (6928); Mistmada Oil Company, Inc. (3032); Piñon Gathering Company, LLC (5943); Sabino Exploration, LLC (1929); Sagebrush Pipeline, LLC (0515); SandRidge CO2, LLC (7903); SandRidge Exploration and Production, LLC (6535); SandRidge Holdings, Inc. (8401); SandRidge Midstream, Inc. (1148); SandRidge Operating Company (1245); SandRidge Realty, LLC (6079); Sierra Madera CO2 Pipeline, LLC (1558); and WTO Gas Gathering Company, LLC (N/A). The location of the Reorganized Debtors' service address is: 123 Robert S. Kerr Avenue, Oklahoma City, Oklahoma 73102.

captioned adversary proceeding (the "Adversary Proceeding"), initiated by Baker Farms, Inc. ("Baker Farms") and Steven T. Bouziden Revocable Trust, Steven T. Bouziden, Trustee ("Steven T. Bouziden Revocable Trust," and together with Baker Farms, the "Plaintiffs"). In support of this Reply Brief, the Reorganized Debtors respectfully state as follows.

**Preliminary Statement**

1. Through this Adversary Proceeding, Plaintiffs seek a declaratory judgment from the Court confirming that they are permitted to prosecute a lawsuit, individually or as a class, against the Reorganized Debtors to recover purported unpaid royalties. As set forth in *SandRidge Exploration and Production, LLC's Opening Pre-Hearing Brief* [Docket No. 34] (the "Opening Brief") and detailed below, Plaintiffs are not entitled to the relief they seek because their claims for royalty underpayments constitute General Unsecured Claim,[2] subject to impairment under the Confirmation Order and Plan.

2. ***First***, Plaintiffs' Kansas oil and gas leases are not executory contracts or unexpired leases within the meaning of 11 U.S.C. § 365, and are not capable of assumption or rejection. Plaintiffs' claims for purported royalty underpayments arising from their Kansas oil and gas leases did not "ride through" the Reorganized Debtors' chapter 11 proceedings unaffected and are not entitled to priority treatment.

3. ***Second***, Plaintiffs' claims for royalties arising from their Oklahoma oil and gas leases are not secured by the Oil and Gas Owners' Lien Act of 2010 (the "OK Lien Act"), 52 Okla. Stat. § 549.1, *et seq*. Plaintiffs' interest in proceeds from the sale of oil and gas extracted from their leased property is limited to a percentage of the proceeds actually received by the

---

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Confirmation Order and Plan.

2

Debtors from oil and gas purchasers. Because the Debtors paid those amounts in full, the OK Lien Act is inapplicable.

4. *Third*, contrary to Plaintiffs' repeated assertions, the Confirmation Order and Plan did address Plaintiffs' claims for royalty underpayments. Article VIII(B) of the Plan provides for the discharge of Plaintiffs' prepetition claims, and paragraphs 88 and 114 of the Confirmation Order enjoin Plaintiffs from commencing or continuing an action on account of those claims. Plaintiffs are not entitled to the relief they seek, which directly contradicts the express provisions of the Confirmation Order and Plan.

## Argument

5. Plaintiffs argue that are entitled to pursue their prepetition claims for royalty underpayments in full, for two reasons: (1) their Kansas oil and gas leases are executory contracts or unexpired leases under 11 U.S.C. § 365; and (2) their claims on account of their Oklahoma oil and gas leases are secured by liens under the OK Lien Act. For the reasons described in the Opening Brief and as set forth below, Plaintiffs' claims for prepetition royalty underpayments are at best entitled to treatment as General Unsecured Claims only.

**I.   PLAINTIFFS' KANSAS OIL AND GAS LEASES ARE NOT SUBJECT TO 11 U.S.C. § 365.**

6. Plaintiffs first argue that their Kansas oil and gas leases constitute executory contracts and unexpired leases under 11 U.S.C. § 365, which were neither assumed nor rejected under the Confirmation Order and Plan. *See Royalty Owners' Pre-Hearing Brief on Specified Questions of Law* [Docket No. 35] ("Plaintiffs' Opening Brief") ¶ 37. On that basis, Plaintiffs assert that their oil and gas leases "ride through" the bankruptcy proceeding and their royalty claims survive unimpaired. *Id.* That argument fails because Kansas oil and gas leases do not constitute executory contracts or unexpired leases within the meaning of 11 U.S.C. § 365.

3

7. Whether Plaintiffs' oil and gas leases constitute executory contracts or unexpired leases is determined by state law. *See Matter of Topco, Inc.*, 894 F.2d 727, 739 n. 17 (5th Cir. 1990) ("While we interpret the Bankruptcy Code as a matter of law, state law determines whether [debtor's oil and gas leases] constitute unexpired leases subject to Section 365."). A contract is executory for the purposes of section 365 if "at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party." *Matter of Murexco Petrol., Inc.*, 15 F.3d 60, 62-63 (5th Cir. 1994); *see also In re Baird*, 567 F.3d 1207, 1210 (10th Cir. 2009) (defining an executory contract to be one in which the obligations of both parties "are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other") (internal quotations and citation omitted); *Cornett v. Roth*, 233 Kan. 936, 943 (Kan. 1983) (defining executory contracts as those which embody "mutual and independent conditions and obligations"). Under Kansas law, a breach is material if "the promisee receives something substantially less or different than he or she bargained for." *Dexter v. Brake*, 46 Kan. App. 2d 1020, 1034 (Kan. Ct. App. 2012).

8. Plaintiffs' oil and gas leases do not constitute executory contracts within the meaning of 11 U.S.C. § 365 because one party's failure to complete performance of the remaining obligations thereunder would not excuse performance of the other party. The only remaining obligations on the part of SandRidge E&P is to pay Plaintiffs a percentage of the proceeds of the oil and gas produced and sold from the leased properties. *See Joint Stipulation of Facts for Adversary Proceeding No. 16-03223* [Docket No. 36] (the "<u>Joint Stipulation</u>"), Exs. C ¶ 3; D ¶ 3; E ¶ 3; F at 1; G at 1. Kansas courts have found that the failure to render royalty payments does not warrant the cancellation or forfeiture of an oil and gas lease, even when a

4

lease specifically provides for its termination upon the non-payment of royalties. *See M & C Oil, Inc. v. Geffert*, 21 Kan. App. 2d 267, 271 (Kan. Ct. App. 1995) (reversing trial court's cancellation of lease for failure by lessee to pay the minimum royalties owed, even where lease provided that "when lessees fail to pay the above minimum, this lease shall thereupon cease to be of any force or effect between the parties hereto"); *Barker v. Kruckenberg*, 33 Kan. App. 2d 545, 547-50 (Kan. Ct. App. 2005) (holding that oil and gas lease was not subject to forfeiture for failure by lessee to render minimum royalty payment, even where lease contained express forfeiture clause terminating lease if annual royalty to the lessor is less than $800). Accordingly, a breach of the Reorganized Debtors' obligations would not not excuse Plaintiffs' performance under their oil and gas leases.

9. Likewise, the breach of Plaintiffs' remaining obligations does not excuse the SandRidge E&P's performance. The only remaining obligation on the part of the Plaintiffs is a passive duty to "defend the title" to the leased property if necessary. *See* Joint Stipulation, Exs. C ¶ 10; D ¶ 10; E ¶ 10; F at 1; G at 1. Kansas courts have held that covenants of warranty which "bind the covenantor to defend the title when it shall be assailed," like the case here, are "prospective in nature." *Wilder v. Wilhite*, 190 Kan. 564, 565-67 (Kan. 1962). The general effect of the covenant of warranty is "that the grantor agrees to compensate the grantee for any loss which the grantee may sustain by reason of a failure of the title which the deed purports to convey or by reason of an encumbrance on the title." *RAMA Operating Co., Inc. v. Barker*, 47 Kan. App. 2d 1020, 1020-1021 (Kan. Ct. App. 2012). A breach of Plaintiffs' warranty covenant obligations would at best give rise to a cause of action for damages, not cancellation or forfeiture of the oil and gas leases. Because any breach of the remaining obligations under Plaintiffs' Kansas oil and gas leases would not be material, they do not constitute executory contracts.

10. Plaintiffs' oil and gas leases similarly do not constitute leases within the meaning of 11 U.S.C. § 365. In Kansas, an oil and gas lease "is ***not a lease*** in the ordinary sense" because it "conveys no interest in the land." *In re Randolph's Estate*, 175 Kan. 685, 686 (Kan. 1954) (emphasis added). An oil and gas lease grants "the right to enter on described land, explore for oil and gas, and if oil and gas be found in paying quantities to operate and produce." *Huston v. Cox*, 103 Kan. 73 (Kan. 1918). "The term 'lease' is applied to them merely through habit and for convenience. They create no estate in land, but merely a kind of license." *Id.* Oil and gas leases in Kansas constitute "an incorporeal hereditament only," because "[u]ntil [minerals are] discovered and brought to the surface, no severance of title occurs. The minerals not only remain a constituent part of the land, but they belong to the owner of the surface soil beneath which they lie." *Kan. Nat. Gas Co. v. Bd. of Commissioners of Neosho Cnty.*, 75 Kan. 335 (Kan. 1907). Moreover, a royalty paid to a lessor "refers not to oil and gas in place, but to share in oil and gas produced and paid as compensation for right to drill and produce, and does not include perpetual interest in oil and gas in ground." *Burden v. Gypsy Oil Co.*, 141 Kan. 147 (Kan. 1935).

11. Plaintiffs' oil and gas leases are leases in name only. By their terms, the Debtors were granted the exclusive right to enter the leased property for the purposes of investigating, exploring, prospecting, drilling, mining, and operating for and producing oil and gas. *See* Joint Stipulation, Ex. C ¶ 1; D ¶ 1; E ¶ 1; F at 1; G at 1. Plaintiffs retained the rights to the underlying oil and gas minerals, which were only severed to the extent they were extracted and sold by the Debtors. Plaintiffs' oil and gas leases did not convey an "interest in realty" as would be expected under an ordinary lease, but rather a license, or the "personal privilege to do some act or series of acts upon the land of another without possessing any estate therein[.]" *Stanolind Pipe Line Co. v. Ellis*, 142 Kan. 102 (Kan. 1935) (comparing and contrasting an easement and a license).

6

Accordingly, Plaintiffs' oil and gas leases are not unexpired leases subject to assumption or rejection under 11 U.S.C. § 365, and Plaintiffs' claims for royalty underpayments did not "ride through" the bankruptcy proceedings unaffected.

12.     Plaintiffs cite to just three cases in support of their claim that "[b]ankruptcy courts have uniformly applied section 365 to Kansas oil and gas leases." Plaintiffs' Opening Brief ¶ 41. Plaintiffs first cite to *In re J. H. Land & Cattle Co., Inc.*, 8 B.R. 237 (Bankr. W.D. Okla. 1981), in which the United States Bankruptcy Court for the Western District of Oklahoma found that Kansas oil and gas leases were within the purview of 11 U.S.C. § 365.  As noted in the Reorganized Debtors' Opening Brief, that case was criticized in two decisions issued by Oklahoma federal courts five years after *In re J. H. Land & Cattle Co.*  In *In re Heston Oil Co.*, 69 B.R. 34, 36 (N.D. Okla. 1986), the United States District Court for the Northern District of Oklahoma found "the reasoning in *J.H. Land & Cattle Co.* to be questionable," and in *In re Clark Res., Inc.*, 68 B.R. 358, 359 (Bankr. N.D. Okla. 1986), the United States Bankruptcy Court for the Northern District of Oklahoma also recognized that "[i]n [*J.H. Land & Cattle Co.*], Judge Kline, of the Western District of Oklahoma Bankruptcy Court, employed reasoning which the District Court of Oklahoma has found to be questionable[.]"  Indeed, that case offers no support for Plaintiffs' arguments—in addition to having no precedential or persuasive value, it is directly contrary to Kansas law, cited above.

13.     The other two cases cited by Plaintiffs are likewise inapposite: (1) Order Granting Motion Regarding Assumption of Executory Contracts / Unexpired Leases (Kansas Oil and Gas Leases and Other Leases [Docket No. 884] filed in In re Crusader Energy Grp. Inc., Case No. 09-31797 (Bankr. N.D. Tex. Nov. 2, 2009); and (2) Order (A) Authorizing Assumption of Certain Oil and Gas Leases, (B) Setting the Cure Amount Thereto, and (C) Granting Related Relief

7

[Docket No. 1619] filed in In re Linn Energy, LLC, No. 16-60040 (Bankr. S.D. Tex. Jan. 24, 2017). Neither the United States Bankruptcy Court for the Northern District of Texas in In re Crusader Energy Grp. Inc., nor the Court in In re Linn Energy, LLC, considered or adjudicated the issue of whether Kansas oil and gas leases qualified for assumption under 11 U.S.C. § 365. Indeed, the Court's order in In re Linn Energy, LLC contained an express caveat that the Kansas oil and gas leases in question were assumed only "[t]o the extent" they qualified as unexpired leases under section 365 of the Bankruptcy Code. In re Linn Energy, LLC, No. 16-60040, Order (A) Authorizing Assumption of Certain Oil and Gas Leases, (B) Setting the Cure Amount Thereto, and (C) Granting Related Relief [Docket No. 1619] ¶ 2 (Bankr. S.D. Tex. Jan. 24, 2017). This Adversary Proceeding presents completely different factual and procedural circumstances, and the orders cited by Plaintiffs have no bearing here.

14. Plaintiffs' Kansas oil and gas leases do not constitute executory contracts or unexpired leases under 11 U.S.C. § 365 and are not subject to assumption or rejection. Accordingly, Plaintiffs' claims for prepetition royalty underpayments on account of those oil and gas leases constitute General Unsecured Claims, subject to impairment under the Confirmation Order and Plan.

## II. PLAINTIFFS' CLAIMS ARE NOT SECURED BY LIENS UNDER THE OK LIEN ACT.

15. Plaintiffs next argue that their claims for prepetition royalty underpayments on account of their Oklahoma oil and gas leases are secured by the OK Lien Act. *See* Plaintiffs' Opening Brief ¶ 47. For the reasons set forth below, Plaintiffs' assertions fail.

16. The OK Lien Act's stated purpose is to "secure the obligations of a first purchaser to pay the sales price," and protects interest owners only to the extent of their actual "interest in oil and gas rights." 52 Okla. Stat. § 549.3(A). "Sales price" is defined as the "proceeds a first

purchaser agrees to pay an interest owner or representative under an agreement to sell." *Id.* § 549.2(17). A "first purchaser" means "the first person that purchases oil or gas from an interest owner, either directly or through a representative, under an agreement to sell[.]" *Id.* § 549.2(4). The OK Lien Act only operates to secure an interest owner's share of the sales price agreed to by a representative and a first purchaser, not an interest owner's purported claims for improperly deducted fees and charges by either the representative or the first purchaser. *See id.* § 549.3(A) ("To secure the obligations of a first purchaser to pay the sales price, each interest owner is hereby granted an oil and gas lien to the extent of the interest owner's interest in oil and gas rights."). Indeed, even where the rights of an interest owner "are to be liberally construed" under the OK Lien Act, those protections only extend "to secure the receipt by the interest owner of the sales price." *Id.* § 549.12(A). Because Plaintiffs were paid their proportionate share of the proceeds from the total value received from third-party purchasers, the OK Lien Act is inapplicable here.

17.     As set forth in Section I, *supra*, Plaintiffs' oil and gas leases granted the Debtors the exclusive right to explore, drill for, mine, and extract oil and gas from leased property. *See* Joint Stipulation, Ex. B ¶ 3. The Debtors sold extracted oil and gas to third-party purchasers, typically at the wellhead where the hydrocarbons are extracted, pursuant to separate contracts providing for a certain sales price negotiated between the parties. The Debtors in turn rendered a percentage of the sales price they received from those oil and gas purchasers to Plaintiffs as a royalty. The Debtors did not subsequently deduct any costs from the sales price received before making the appropriate royalty payments to Plaintiffs. Plaintiffs have not and cannot prove that the Debtors failed to pay Plaintiffs their share of the proceeds received from oil and gas purchasers through this Adversary Proceeding, and Plaintiffs accordingly have no basis to argue

that the OK Lien Act granted liens which secured not only their proportion share of the sales price received from the first purchaser, but also their claims for purported monies on top of the percentage of proceeds provided for in their oil and gas leases.

18. Moreover, even assuming *arguendo* that the OK Lien Act did grant liens that secured Plaintiffs' prepetition claims, those liens would at best attach to the traceable proceeds of the disputed oil and gas sales. *See* 52 Okla. Stat. § 549.3(C) ("[A]s between an interest owner and a representative of an interest owner . . . such interest owner's oil and gas lien continues uninterrupted and without lapse in proceeds in the possession or control of a representative until the interest owner on whose behalf such representative acts receives such proceeds in full."). For the reasons described in the Reorganized Debtors' Opening Brief, any prepetition proceeds attributable to the sale of oil and gas have long since reentered the stream of commerce, and there are no applicable proceeds in the possession or control of the Reorganized Debtors to which any purported liens could attach. *See* Opening Brief ¶¶ 43-45; Joint Stipulation ¶¶ 22-24.

19. Finally, to the extent the Plaintiffs' claims for royalty underpayments are secured by liens on the Reorganized Debtors' assets pursuant to the Lien Act, those liens expired one year after the royalty payments were due. 52 Okla. Stat. Ann. § 549.10(A) ("An oil and gas lien shall expire, as to an interest owner, one (1) year after the last day of the month following the date proceeds from the sale of oil or gas subject to such lien are required by law or contract to be paid to such interest owner[.]"). Under Oklahoma law, royalties on the sale of oil and gas proceeds are due prior to the last day of the third month following the sale thereof. *Id.* § 570.10(B)(2)(b). Therefore, any valid liens would extend to obligations incurred no earlier than 15 months before the Petition Date.

### III. PLAINTIFFS' CLAIMS ARE SUBJECT TO THE DISCHARGE AND INJUNCTION PROVISIONS OF THE CONFIRMATION ORDER AND PLAN.

20. Plaintiffs confusingly assert that because their claims were not addressed by the Confirmation Order and Plan, they are entitled to commence or continue an action to recover for purported unpaid royalties, including the action that was filed in April 2016 in the District Court of Comanche County, Kansas, captioned *Baker Farms, Inc. v. SandRidge E&P, LLC*, No. 16-cv-000002 (the "Pre-Petition Action"). That argument fails, for the simple reason that the Confirmation Order and Plan did address Plaintiffs' prepetition claims for royalty underpayments.

21. As described in the Opening Brief and above, Plaintiffs' claims constitute General Unsecured Claims. Article III(B)(5) describes the classification and treatment of General Unsecured Claims. Article VIII(B) of the Plan further provides that "the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims[.]" Paragraphs 88 and 114 of the Confirmation Order also enjoin Plaintiffs from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims[.]" Plaintiffs have no basis to assert that they are entitled to pursue their claims in full, in the Pre-Petition Action or otherwise.

### Conclusion

22. For all the reasons stated in the Opening Brief and this Reply Brief, the Court should enter an order: (1) denying Plaintiffs' requested relief; (2) finding that Plaintiffs' Kansas oil and gas leases are not subject to 11 U.S.C. § 365 and Plaintiffs' claims for royalty underpayments under their Oklahoma oil and gas leases are not secured by any liens under the OK Lien Act; (3) finding that Plaintiffs' claims for the alleged underpayment of royalties

constitute General Unsecured Claims, subject to treatment as such under the Confirmation Order and Plan; and (4) barring Plaintiffs from commencing an action or continuing the Pre-Petition Action for the alleged underpayment of royalties by the discharge and injunction provisions of the Confirmation Order and Plan.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated:  June 12, 2017 | Respectfully Submitted, |

*/s/ Mark McKane, P.C.*
Zack A. Clement (Texas Bar No. 04361550)
**ZACK A. CLEMENT PLLC**
3753 Drummond Street
Houston, Texas 77025
Telephone:   (832) 274-7629
Email:          zack.clement@icloud.com

- and -

Mark McKane, P.C. (admitted *pro hac vice*)
Michael P. Esser (admitted *pro hac vice*)
Kevin K. Chang (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:   (415) 439-1400
Facsimile:    (415) 439-1500
Email:          mark.mckane@kirkland.com
michael.esser@kirkland.com
kevin.chang@kirkland.com

- and -

Steven N. Serajeddini (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:          steven.serajeddini@kirkland.com

*Counsel for the Reorganized Debtors*